FILED
MAR 17 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 8237

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. Francisco Javier GALLEGOS-Zazueta, (1) Maria Teresa LEON, (2) Sergio AISPURO-Badillo, (3) Homero ESQUIVEL-Angel, (4) Defendants | Magistrate Case No.: COMPLAINT FOR VIOLATION OF 21 U.S.C. § 952 and 960 Importation of a Controlled Substance, and 18 U.S.C § 2 Aiding and Abetting **AMENDED COMPLAINT** |

The undersigned complainant being duly sworn states:

That on or about March 14, 2008 within the Southern District of California, defendants Francisco Javier GALLEGOS-Zazueta, Maria Teresa LEON, Sergio AISPURO-Badillo, and Homero ESQUIVEL-Angel, did knowingly and intentionally import approximately 934.72 kilograms (2062.98 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Section 952 and 960, and Title 18, United States Code, Section 2.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

_____
Enrique Torregrosa Special Agent
U. S. Immigration & Customs
Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 17th DAY OF MARCH 2008.

_____
PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

## PROBABLE CAUSE STATEMENT

I, Special Agent Enrique Torregrosa, declare under penalty of perjury, the following is true and correct:

On March 14, 2008, at approximately 0100 hours, a concerned citizen contacted Special Agent (SA) Torregrosa and advised him that a 1990 Ford Econoline Van with unknown plates was going to cross the Calexico East Port of entry carrying about 800 kilograms of marijuana shortly after the Port opens at 0300 hours.

On March 14, 2008, at approximately 0400 hours, Customs and Border Protection Officers (CBPO) spotted a 1990 Chevrolet Van, bearing California plate 2TAS364. The officers inspected the vehicle and located several packages in the back of the van. The driver was identified as Francisco Javier GALLEGOS. He was taken into the vehicle secondary office for further processing. CBPO C. Martinez probed one of the packages and obtained a green leafy substance, which field-tested positive for marijuana. The van was completely packed with packages consistent with the earlier report that 800 kilograms of marijuana were going to be smuggled into the United States.

SA Torregrosa who was on scene was notified and contacted GALLEGOS. As SA Torregrosa was identifying himself to GALLEGOS, GALLEGOS' cell phone group talk radio rang. SA Torregrosa answered the radio in Spanish and stated "Que Onda", which means what's up, and a male subject identified as "PULGA" by the cell phone's caller I.D. answered in Spanish thinking he was talking to GALLEGOS and asked, "Ya crusastes la garita," meaning if I had already crossed the port of

entry, to which I replied "Simon", meaning yes. The subject replied back by saying "Okay llevatela a la Wal-Mart de El Centro, y alguin te va ha pedir las llaves, daselas y esperate en la Wal-Mart," meaning Okay take it to Wal-Mart in El Centro, and someone will ask you for the keys, give them the keys and wait at Wal-Mart.

On March 14, 2008, prior to 0500 hours, a cold convoy operation (surveillance operation) commenced at the Calexico East Port of Entry by the ICE, Office of Investigations, and Imperial County Narcotic Task Force (ICNTF). SA Gates, posing as the "load" driver, drove the van to Wal-Mart in El Centro, California. Surveillance was conducted by Special Agents from Office of the Assistant Special Agent in Charge, Calexico, California. SA Gates and the van were followed from the Calexico East Port of Entry to Wal-Mart in El Centro, California. Once the drug-laden van arrived at the Wal-Mart in El Centro, California, at approximately 0500 hours, SA Gates exited the van and waited for a call, at approximately 0700 hours GALLEGOS' cell phone group talk rang, and PULGA stated to SA Torregorsa to drive the van to Jack-In-The-Box located in Brawley, California near the 111 Highway.

SA Gates drove the van to the Jack-In-The-Box in Brawley, California. ICE and ICNTF agents followed SA Gates and the van from El Centro, Wal-Mart to the Jack-In-The-Box in Brawley. Upon arrival to the Jack-In-The-Box at approximately 0745 hours, SA Gates dropped the van and left the keys underneath the driver's side mat and exited the van.

At 0755 hours, a Hispanic male wearing blue shorts, blue shirt, 5' 9", 200 pounds entered the van and drove away. ICE and ICNTF agents followed the

subject and the van from Jack-In-The-Box to 1346 H Street in Brawley, California. The van was driven through an alley and parked in the backyard of 1346 H Street. The driver exited the van and went inside the house. No packages were off-loaded.

On March 14, 2008 at approximately 1200 hours, the same driver entered the van and left the residence at 1346 H Street. The subject drove the van to 699 S. Fifth Street in Brawley, California. The driver seemed to be following a Hispanic female driving a 2006 Nissan Altima bearing California plate number 5TKT659. The van went behind the residence at 699 S. Fifth Street through an alley and backed into the residence. The Nissan Altima drove into the driveway of the residence. Utility record checks show that the person who is currently responsible for paying the utilities for the address of 699 S. 5th Street, Brawley, California 92227, is Maria Leon. Agents conducted continuous surveillance of this residence and observed the actions and movements of the individuals involved in this smuggling event.

On March 14, 2008 at approximately 1800 hours, a white Chevrolet Silverado pick-up truck pulling a trailer with one male occupant later identified as Sergio AISPURO-Badillo arrived at 699 S. Fifth Street residence and parked in the alley behind the house. AISPURO and two other unidentified subjects off-loaded numerous large packages from the van and placed them into the trailer. AISPURO then drove away from the residence and ICNTF agents followed AISPURO and the truck to 271 East Evans Hewes, in El Centro, California, the location of an auto shop business. Upon arrival to this business, a subject later identified as Homero ESQUIVEL-Angel opened the gate to the business for AISPURO and ICNTF agents

intercepted the "load" vehicle and arrested AISPURO and ESQUIVEL. Agents then cleared the business for safety reasons and located seven undocumented aliens hiding within the business.

AISPURO and ESQUIVEL were taken to the Calexico West Port of Entry for further processing. The seven undocumented aliens were picked-up by Border Patrol Agents and taken to the El Centro Border Patrol Station for further processing. The truck and the trailer were taken to Calexico East Port of Entry, where Customs and Border Protection officers removed a total of thirty-four packages of marijuana weighing approximately 370.42 kilograms (814.92 pounds).

On March 14, 2008, at approximately 1900 hours, ICE agents executed a federal search warrant at 699 S. Fifth Street, Brawley, California. Two subjects later identified as Maria Teresa LEON and her teenaged daughter were encountered at the residence. Both were detained for questioning. A further search of the residence revealed the Chevrolet van bearing California plate 2TAS364 (previously intercepted at the Calexico East Port of Entry) parked in the backyard of the residence. Both M. LEON and her daughter were transported to the Calexico West Port of Entry for further processing. The van was taken to Calexico East Port of Entry where Customs and Border Protection Officers removed a total of fifty packages of marijuana weighing approximately 564.30 kilograms (1,241.46 pounds).

The total combined weight of the load was 934.72 kilograms (2062.98 pound) of marijuana.

INTERVIEWS OF DEFFENDANTS:

Special Agent McDowell advised GALLEGOS of his Miranda Rights earlier on March 14, 2008 at approximately 0420 hours. GALLEGOS acknowledged and waived his rights and stated that a subject known to him as RICHARD threatened him and his family to cross the Chevrolet van. GALLEGOS knew the van contained marijuana when he crossed it into the United States from Mexico.

On March 14, 2008, at approximately 2200 hours, Special Agent Torregrosa and Special Agent Webster arrived at the Calexico West Port of Entry.

On March 14, 2008 at approximately 2333 hours. SA Torregrosa advised ESQUIVEL of his Miranda Rights, which he acknowledged and waived agreeing to answer questions. ESQUIVEL stated that on March 13, 2008, he was smuggled into the U.S. from Mexico through the mountains and was taken to the business located at 271 East Evans Hews, El Centro, California. ESQUIVEL stated that he was locked up in a room with seven other undocumented aliens all day. ESQUIVEL also stated that at about 1900 hours while he was smoking a cigarette in front of the business (which is in plain view of a major four lane East/West highway), a white Chevrolet pick-up truck arrived and the driver told him to open the gate. ESQUIVEL opened the gate and allowed the truck to enter the business. At that time ICNTF agents, arrested ESQUIVEL and the driver of the truck later identified as Sergio AISPURO-Badillo. ESQUIVEL denied knowledge of the marijuana located in the trailer being pulled by the pick-up truck.

Based on my conversations with other agents, including Special Agent Webster who has investigated human trafficking organizations for more than twenty

6

years, I have learned that alien smuggling organizations (ASO) would not allow smuggled aliens to walk around freely in the public view. This is to prevent the escape of the undocumented aliens prior to their delivery to their final destination, where payment would be received. The undocumented aliens are kept hidden from view to prevent detection by law enforcement personnel. Only those trusted members of the smuggling organization who are charged with the care of the undocumented aliens are allowed to come freely in and out of the "drop" or "load" house in order to conduct business. In the opinion of Special Agent Webster, since ESQUIVEL admitted that he was allowed to come freely in and out of the building on the grounds of the business, and the fact that he opened the gate to allow AISPURO to come into the business, ESQUIVEL demonstrated dominion and control of the business and the aliens within.

Also, Special Agent Webster opined that ESQUIVEL would not have opened the gate to an unknown vehicle and driver because this would expose himself and the undocumented aliens inside to the detection by law enforcement or other ASO's seeking to steal their human cargo. Further, I am informed that ASOs not only move undocumented aliens but narcotics. Therefore, is not uncommon to have narcotics staged and transported with undocumented aliens together.

Based on the information above, it is reasonable to believe that ESQUIVEL not only had control of the business and undocumented aliens inside, but that he knew AISPURO and the purpose of his visit when he allowed AISPURO entry into the business.

On March 15, 2008, at approximately 0037 hours, SA Torregrosa advised LEON of her Miranda Rights, which she acknowledged and waived agreeing to answer questions.

Maria LEON stated that on March 14, 2008 at approximately 1130 hours, LISA ACUNO or ACOSTA called her via cell phone and asked her if BRENDA, another friend of LEON's could hide BRENDA's vehicle in her backyard, because BRENDA's husband wanted to take it away. LEON told LISA that she would hide the vehicle in her backyard. At about 1200 hours on the same day BRENDA called LEON via cell phone and told her to open the back gate, because she was on her way. LEON opened the gate and went inside the back door of the house, observed the van through the window, and walked out the front door, entered her vehicle and left.

LEON stated that a short time later, her daughter called to tell her that she just arrived home. LEON returned home and picked her up at approximately 1315 hours. They returned to the house at approximately 1700 hours. After arriving home LEON's daughter left the house. LEON stated LISA called her at approximately 1800 hours and told her she would be picking up the van. LEON stated that right after LISA called another friend called and asked her to pick up some flowers. LEON left the house and returned approximately ten minutes later. LEON believed the van was gone, but did not look to see if it was gone. She claims she went into her bedroom, turned the music up loud and prepared herself to go the movies.

SA Torregorsa interviewed LEON's daughter. The daughter stated she returned home at approximately 1800 hours and found her mother getting dressed

to go to the movies. The daughter stated there was no loud music playing at the time.

LEON denied any knowledge of the marijuana in the vehicle located in her backyard.

ICE and ICNTF agents conducting surveillance, saw LEON walking around the Chevrolet van (then containing 900 kilograms of marijuana) at approximately 1740 hours, this was during the time that LEON stated she was getting ready to go to the movies. At approximately 1800 hours, a white Chevrolet pick-up truck pulling a white box trailer arrived at the rear of the residence. An unknown subject opened the gate and the truck pulled into the yard and parked next to the van. During the next thirty minutes, three unknown subjects transferred numerous large packages of marijuana from the van and into the trailer. Once this was completed, the truck and trailer departed the area.

The above facts and observations, directly conflict with statements provided by LEON. LEON stated that when she came home, she believed the van was gone, but never checked to see if it was gone. It was at this time that the surveillance team observed her walking around the van in the backyard prior to the removal of numerous large packages of marijuana from the van. It should be noted that when agents later approached the van containing less than half of the amount of marijuana than in the original load, they noted a strong odor of marijuana coming from the van. It is unlikely that LEON would not have noticed the strong odor of marijuana coming from the van when fully loaded with 934.72 kilograms of

marijuana. Since the marijuana had been confined inside the closed van in direct sun light all day, the interior of the van would become very warm, intensifying the odor of the marijuana.

LEON also stated that she did not hear anything because she was in her room with loud music on while she was getting ready to go to the movies. However, her daughter stated that when she arrived home she did not hear any loud music.

Based on my experience and my conversations with other agents who have over twenty combined years of experience investigating drug trafficking organizations (DTO), DTOs assign specific tasks to trusted members of the DTO to aid, assist, and facilitate the importation, transportation, and distribution of narcotics into the United States. Furthermore, prior to the importation, a DTO must coordinate a location to be used as a "stash" house to avoid detection by law enforcement officers. The DTO also utilizes the stash houses to count the narcotics and get the narcotics ready for distribution. It is highly unlikely that a DTO would smuggle narcotics into the United States without previously designating a "stash" house and organizing its members to perform their specific tasks. The actions of LEON, as observed by agents, are consistent with her suspected role in the importation of the more than 900 kilograms of marijuana.

On March 15, 2008, at approximately 0248 hours, SA Torregros advised AISPURO of his Miranda Rights. AISPURO invoked his Miranda rights, however; he kept making spontaneous remarks such as, I was praying to go to jail, I mess up twice, wait once, because the last time I did not know, how much time I am going

to get for 300 pounds, there was thirty-four packages.

Based on my experience and information provided to me by senior agents, smuggling organizations ensure that a carefully structured and controlled environment exists to successfully import and distribute their elicit commodity, whether it is narcotics or undocumented aliens. Further, due to the large amount of money at stake in this case, approximately three million dollars worth of marijuana (retail value), smuggling organizations would not take the unnecessary risk of involving individuals without knowledge of the smuggling event.

In conclusion, there is probable cause to believe that GALLEGOS, ESQUIVEL, LEON, and AISPURO were each assigned a specific task to aid, assist, and facilitate the importation, transportation, and distribution of the marijuana seized.

Executed on March 16, 20087 @ <u>1520 hours</u>.

Enrique Torregrosa, Special Agent
U. S. Immigration & Customs Enforcement

On the basis of the facts presented in this probable cause statement consisting of 10 page, I find probable cause to believe that the defendant named in this probable cause statement committed the offense on 03/14//08 in violation of 21 U.S.C. §§ 952 & 960. *and 18 USC § 2 - aiding and abetting theory as to Defendants 2, 3 + 4*

_____
Lisa S. Porter
United States Magistrate Judge

3/16/08   4:45 p.m.
Date/Time